# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**GAYLE BENTLEY**                                                               **PLAINTIFF**

**VS.**                                  **CASE NO. 3:21-CV-00196 PSH**

**KILOLO KIJAKAZI, Acting Commissioner,**
   **Social Security Administration**                              **DEFENDANT**

## ORDER

Plaintiff Gayle Bentley ("Bentley"), appeals the final decision of the Commissioner of the Social Security Administration (defendant "Kijakazi") to deny her claim for disability insurance benefits ("DIB"). Bentley claims the Administrative Law Judge ("ALJ") erred in two ways: (1) by wrongly rejecting the opinion of treating physician Dr. S. R. Cullom ("Cullom"); and (2) by improperly assessing her credibility. The Court has carefully reviewed the record, including the medical records, to determine whether there is substantial evidence in the administrative record to support Kijakazi's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from February 14, 2019, the alleged onset date, through March 3, 2021, the date of the ALJ's decision.

*The Administrative Hearing:*

In response to questions posed by the ALJ, Bentley stated she was 60 years old, with a high school education, and lived with her husband and her 88 year old mother-in-law. Bentley described a 28 year work history as an administrative assistant with a gas company before retiring in February 2019. She did "mostly computer work" and the job entailed no lifting and "very little" standing and walking. (Tr. 35-36).

In response to questions from her attorney, Bentley explained that she quit work due to the amount of pain experienced while sitting at her desk. Prior to leaving her job, Bentley said she often took breaks to relieve the pain, which extended "from my neck to my calves. It's everywhere." (Tr. 38). Bentley also cited pain in her hands which made typing difficult. The pain has, according to Bentley, gotten progressively worse since 2015. Bentley also testified to being diagnosed in 2017 with Lyme disease, which makes her feel like she has the flu all the time.

Bentley recounted daily activities, stressing that she provided no caregiving for her mother-in-law ("none whatsoever"). (Tr. 39). Bentley mentioned brief periods (two weeks) of assisting her mother-in-law with sponge baths and helping her arise after non-invasive back procedures on three occasions. She stated she did very little cooking and could not do anything requiring her to stand for a long period. She estimated she could stand for "thirty minutes at the most." (Tr. 40). She could walk to the end of her driveway, which she estimated took her five minutes. She also

judged she could sit for thirty minutes before the pain "becomes almost unbearable" and that riding in a car was worse than simply sitting. (Tr. 42). Although her husband and mother-in-law perform the heavy household chores, and her husband does the grocery shopping, Bentley occasionally washes clothes but struggles with removing the wet clothes from the washer. Bentley said she could fold clothes, and could button and zip clothing items. Bentley indicated she could shower and fix her hair and makeup, although showering was exhausting and she did not do so daily. Her lifting abilities were very limited and she said she could not open a jar of pickles.

Bentley and her husband no longer go to church or dine out. In the past, she described walking three miles daily, working out at a gym, and enjoying trips. This changed, according to Bentley, in 2015, after a gym workout. Now, Bentley described her daily activities as watching television in her pajamas.

Bentley listed the medications she takes, including Flexeril, a beta blocker, Indocin, Gabapentin, Extra strength Tylenol, and an over-the-counter medication suggested by her physician to combat Lyme disease.

Karen Terrill ("Terrill"), a vocational expert, testified. The ALJ posed a series of hypothetical questions to Terrill. Terrill assessed Bentley's past relevant work to

be sedentary, skilled work, with an SVP of 5.[1] The first question asked Terrill to consider a hypothetical worker of Bentley's age, education, and experience, who could perform light work (standing or walking for six hours in the workday) with the following restrictions: she can occasionally climb ramps and stairs; can occasionally climb ladders, ropes, or scaffolds; can occasionally balance, stoop, crouch, crawl, and kneel; and can tolerate occasional exposure to hazards such as unprotected heights and moving mechanical parts. Terrill responded that such a worker could perform Bentley's past relevant work, both "actually and as generally" performed. (Tr. 50). The ALJ then altered the hypothetical, limiting the worker to standing or walking two hours (sedentary work) in the workday. Terrill indicated such a worker could perform Bentley's past relevant work.

When the hypothetical question was altered in two additional ways (changing the SVP level to 4, and assuming three absences per month from work) Terrill testified the worker could not perform Bentley's past work or other work in the national economy. (Tr. 31-52).

---

[1] SVP is the Specific Vocational Preparation, referring to the amount of time required by a typical worker to learn the techniques, etc., to perform a job. SVP of 5 translates to a learning period of 6 months to 1 year.

*ALJ's Decision:*

In his March 3, 2021, decision, the ALJ determined Bentley had the following severe impairments: fibromyalgia; scoliosis of the lumbar spine; lumbar degenerative disc disease; sacroiliac joint osteoarthritis; mild multilevel cervical spondylosis; mild right knee joint space narrowing; mild axony sensory polyneuropathy; and Lyme's disease. The ALJ found that Bentley had no medical determinable ankylosing spondylitis. In addition, the ALJ assessed Bentley to have nonsevere depressive disorder.

The ALJ considered the "paragraph B" criteria regarding mental impairments, finding Bentley had no limitation in understanding, remembering, or applying information, no limitation in interacting with others, no limitation in concentrating, persisting, or maintaining pace, and a mild limitation in adapting or managing oneself.

The ALJ found Bentley did not have an impairment or combination of impairments that met a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ further determined Bentley had the residual functional capacity ("RFC") to perform a range of sedentary work with the restrictions which mirrored those detailed in the initial hypothetical question posed to Terrill. The ALJ assessed Bentley's subjective allegations, finding her statements "inconsistent because while

the evidence shows the claimant's conditions my limit her activities; her limitations are not work preclusive." (Tr. 23).

The ALJ addressed the medical opinions in the record, finding the opinion of state agency medical expert Kevin Santulli, Ph.D., persuasive on the issue of Bentley's mental status. The opinion of Kenneth B. Jones, Ph.D., who saw Bentley as a consultative examiner regarding mental status, was deemed not entirely persuasive. State agency physician Jim Takach, M.D., who opined Bentley had limitations with light exertion work, was "generally persuasive" according to the ALJ. (Tr. 24). The ALJ found the opinion of consultative examiner Dr. Shakeb Hashimi ("Hashimi") was not persuasive "as it does not set forth a residual functional capacity." (Tr. 25).

The ALJ also considered the opinion of treating physician Cullom:

> Dr. Cullom reported limitations of lifting and carrying less than 10 pounds occasionally, standing and walking less than 2 hours in an 8-hour day and standing and walking three minutes at one time without a break. Dr. Cullom noted limitations of sitting of less than 2 hours during an 8-hour day and sitting 20 minutes at one time without a break. He noted the claimant would need frequent rest periods, longer than normal breaks and an opportunity to shift positions. The claimant could reach in all directions, finger, or handle for 2/3 of an 8-hour workday (frequently). She must avoid moderate exposure to environmental limitations, except she must avoid concentration to sunlight. The claimant would need to be absent more than 3 days per month. The undersigned finds that these limitations are not persuasive. The opinion is supported by an examination that indicates marked paraspinous

> tenseness, positive straight leg raise bilaterally, and degenerative joint disease of both knees, but no information was provided on the claimant's gait, range of motion, and no neurological impairment was indicated. In light of the limited evidence at this and other examinations from this provider it is necessary to compare his opinion with the claimant's performance at the consultative examination. Based on the comparison, the opinion appears to overstate the claimant's limitations.

(Tr. 24).

The ALJ determined Bentley could perform her past relevant work, a sedentary skilled position, as it was actually performed. Accordingly, the ALJ concluded she was not disabled. (Tr. 15-24).

*Bentley's First Claim – the ALJ wrongly rejected Cullom's opinion.*

Bentley contends the ALJ failed to comply with the relevant regulations for evaluating medical opinion evidence when considering the opinions of treating physician Cullom, who offered his opinions in June 2020. (Tr. 492-494).

The regulations governing the consideration of the medical opinions were revised for claims filed on or after March 27, 2017. Bentley filed her claim in December 2019. The new regulations eliminated the "long-standing 'treating physician' rule." *See Fatuma A. v. Saul*, 2021 WL 616522, 5 (D. Minn. 2021), report and recommendation adopted, 2021 WL 615414 (D. Minn. 2021). The regulations now provide the following:

> ... Under the new regulatory scheme, the Commissioner "will not defer

or give any specific weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. 404.1520c(a). Instead, ALJs will determine the persuasiveness of each medical source or prior administrative medical findings based on supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).

The new articulation requirements are meant to "provide individuals with a better understanding of [the Commissioner's] determinations and decisions" and "provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017). ...

See *Phillips v. Saul*, 2020 WL 3451519, 2 (E.D. Ark. 2020) (Deere, MJ).

The new regulations require the ALJ to discuss, at a minimum, the supportability and consistency of a medical opinion. Bentley maintains the ALJ fell short of the requirements with regard to both supportability and consistency. Following a review of the record, the Court finds the ALJ did not err in evaluating Cullom's medical opinions. Substantial evidence supports the ALJ's consideration of the supportability and consistency of Cullom's opinions.

Prior to analyzing the specifics of Cullom's opinion, the Court observes that Cullom, a general practitioner, provided the opinion in a checklist format. In

addition, Cullom did not indicate the time period covered by the limitations.² These details detract from the supportability of the opinion. Cullom's treatment of Bentley pre-dates the relevant period, beginning in April 2018. Cullom and Lisa Booker ("Booker"), APN, treated Bentley for a variety of complaints, including back pain on occasion. For example, Bentley complained of back pain in December 2018 and told Booker this might improve when she retired in February of 2019. (Tr. 338-340). Cullom and Booker treated Bentley about eight times in 2019 and 2020 prior to Cullom's referral for physical therapy care in September 2020. (Tr. 327-329, 331-333, 335-337, 443-449, 452-458, 493-494, 496-498, 560-565) (some of the citations to Cullom's record are duplicates).

**Supportability:** Cullom opined that the limitations he found were supported by MRI reports and bilateral straight leg tests. The opinion is difficult to read but appears to suggest pain occurs when Bentley's left leg reaches thirty degrees. Cullom did not identify the particular MRI reports supporting his limitations, but may be referencing a May 2017 lumbar spine MRI done on his referral.³ The impressions

---

² In the section where Cullom was to indicate the relevant time period the form reads, "From ___ to _99_." (Tr. 494).

³ A cervical spine MRI was done in March 2015, and in August 2016 Dr. Leslie McCasland is noted to have reviewed an earlier cervical and lumbar spine MRI, commenting that "mild degenerative changes" were found in both areas. (Tr. 590).

from the 2017 MRI, in relevant part, were: lumbar spine moderate/marked rotatory levoscoliosis, mild facet arthropathy, and multilevel degenerative disc disease, similar to 2015, with likely Tarlov cysts,[4] and no lumbar spine central canal stenosis. The ALJ found, though, that Cullom's opinion was not persuasive because it was "supported by an examination that indicates marked paraspinous tenseness, positive straight leg raise bilaterally, and degenerative joint disease of both knees, but no information was provided on the claimant's gait, range of motion, and no neurological impairment was indicated." (Tr. 24). The ALJ also noted "limited evidence" was provided by Cullom to support his opinion. *Id.* These findings of the ALJ have support in the record, and the ALJ could properly find that Cullom's opinions are not supported by his own notes. This is an acceptable reason for discounting Cullom's opinions. *See Adair v. Saul*, 816 Fed.Appx. 26 (8th Cir. 2020) (opinion may be discounted if inconsistent with physician's notes).

While Cullom diagnosed Bentley with marked paraspinous tenseness, positive straight leg raise bilaterally, and degenerative joint disease of both knees on two occasions (on May 23, 2020, the date of Cullom's medical source statement, and on August 14, 2020), other encounters with Bentley do not record these findings. (Tr.

---

[4] Tarlov cysts, according to Webmd.com, are not life threatening but can lead to pain or muscle weakness, and are treatable.

494, 564).  For example, during the relevant period Cullom also treated Bentley for sinusitis, bronchitis, abdominal pain, malaise, fatigue with alopecia, tremors, and anxiety and depression.  The ALJ did not err in citing the limited evidence to support the limitations regarding Bentley's ability to sit, stand, and lift.  The ALJ also did not err in citing Cullom's silence on Bentley's gait, range of motion, and absence of neurological impairment.[5]  Finally, Cullom's May 2020 opinion of severe limitations (e.g., inability to stand/walk for three minutes before needing a break) appears unsupported by Cullom's September 2020 referral of Bentley for physical therapy.  On discharge from physical therapy Bentley still had lumbar pain but felt much better than before, with an improved outlook and mood.  The therapist rated Bentley to have full trunk range of motion into all planes, lower extremity/trunk strength of 4+/5, and she was released to a home exercise program.  (Tr. 569).

It is not the role of the Court to re-weigh the evidence and, even if this Court would decided the case differently, it cannot reverse the ALJ's decision if that decision is supported by good reason and based on substantial evidence.  *See Dillon v. Colvin*, 210 F.Supp.3d 1198 (D.S.D. 2016).  Here, the evidence is capable of more than one acceptable characterization, and the ALJ could find as he did with respect

---

[5] Cullom's September 25, 2020, examination noted Bentley was neurologically normal.  (Tr. 558).

to the supportability of Cullom's opinions.

**Consistency:** The ALJ emphasized the limited evidence which supported Cullom's opinions. In addition, the ALJ noted the inconsistency of Cullom's opinions when compared with the results of Bentley's January 2020 consultative examination by Hashimi. (Tr. 429-435). Hashimi's results, based upon x-rays of cervical and lumbar spine and both knees and his examination of Bentley, included: normal range of motion for all extremities, with pain noted at the extremes of the range of motion; straight leg raise test positive for both knees at 45 degrees; muscle strength 5/5; no muscle atrophy; patient report of mild numbness and tingling of both upper and lower extremities but objective sensory examination within normal limits; normal posture and gait; grip strength 100% on both hands; able to stand/walk without assistive devices; able to walk on heel and toes; able to squat/arise from a squatting position, although noting pain in lower back and knees; normal x-ray of cervical spine; moderate scoliosis of lumbar spine at 15 degrees; normal x-ray of right knee with mild joint space narrowing; and normal x-ray of left knee. Hashimi diagnosed Bentley with moderate scoliosis of the lumbar spine, generalized osteoarthritis, hypertension and history of supraventricular tachycardia (stable), generalized anxiety disorder, and history of Lyme disease. Hashimi concluded, "[o]ther than scoliosis related chronic back pain, no significant physical or mental

limitation or disability detected." (Tr. 435).

The ALJ's comparison of Hashimi's findings to those contained in Cullom's medical source statement was a proper consistency inquiry, and the variance in those documents is a valid basis for the ALJ's treatment of Cullom's opinions.

The ALJ complied with the regulations and analyzed both the supportability and consistency of Cullom's opinions. Bentley's claim to the contrary is without merit.

*Bentley's second claim – the ALJ improperly assessed her credibility.*

As part of assessing the claimant's RFC, the ALJ is required to evaluate the subjective statements of the claimant. *See Pearsall v. Massanari*, 274 F.3d 1211 (8th Cir. 2001). The ALJ does so by determining whether the claimant has a medically determinable impairment that could reasonably be expected to produce pain or other symptoms and, if so, evaluating the intensity, persistence, and limiting effects of the pain or other symptoms. *See* Social Security Ruling ("SSR") 16-3p. In making the latter evaluation, the ALJ must consider all the evidence, including information about the claimant's prior work record, and evidence of the following factors:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives

>or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms . . . ; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 16-3p. The ALJ is not required to explicitly discuss each relevant factor. *See Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

Bentley faults the ALJ for his evaluation of her subjective statements, alleging he addressed only the objective medical evidence and the medical opinions, neglecting to address any of the other relevant factors, including her lengthy work history.

While Bentley is correct that the ALJ did not explicitly address her work history[6] in evaluating her subjective statements, his overall treatment of her statements is supported by substantial evidence.

The ALJ considered more than the objective medical evidence and opinions in evaluating Bentley's subjective statements. The ALJ noted the inconsistency between Bentley's testimony and the record regarding her care of her mother-in-law. Bentley testified to no caregiving duty with her mother-in-law, and to limited caregiving since her mother-in-law moved in to Bentley's residence. In September 2019, however,

---

[6] Bentley also faults the ALJ for failing to address other factors, such as side effects from medications. Bentley, however, did not testify to any side effects and Cullom specifically noted none in his medical source statement. (Tr. 493).

Bentley indicated to treating physician Charles Crist ("Crist") that she had become a full time caretaker in June, "causing more stress." (Tr. 381). About a month later, in October 2019, Cullom recorded, "Her mother-in-law has had a mini-stroke and they moved in to take care of her and it is an extremely difficult situation according to Home Health and PT the mother-in-law is ready to get up and move on her own but she still wants to be waited on hand and foot." (Tr. 327). In a March 2020 telephone consultation with Crist, Bentley cited stress associated with her mother-in-law living with her. (Tr. 439-440). In August 2020 Cullom noted, "Of course, she has been taking care of her mother-in-law and lifting and pulling. This is always bad for her." (Tr. 563). In September 2020 Cullom recorded there was "lots of stress going on in her house now recently." (Tr. 560). Later that month, on referral from Cullom, the physical therapist outlined long term goals for Bentley to include learning proper body mechanics for transferring and lifting, to properly perform household and caregiver tasks, and to be able to perform aerobic activity for thirty minutes four times a week. (Tr. 574, 580).

    The ALJ stressed the objective medical evidence, the opinions of medical personnel, and the inconsistency of Bentley's statements. As previously noted, an ALJ is not obligated to list and address every factor. *Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005). While the ALJ could have addressed more factors he provided an

adequate basis for his evaluation of Bentley's subjective statements. There is no merit to Bentley's second claim.

In summary, the ultimate decision of Kijakazi was supported by substantial evidence. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Kijakazi is affirmed and Bentley's complaint is dismissed with prejudice.

IT IS SO ORDERED this 22nd day of July, 2022.

_____
UNITED STATES MAGISTRATE JUDGE